THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN CHALLENGER, LLC, | CASE NO. C16-0915-JCC |
| Plaintiff, | ORDER |
| v. | |
| DNV GL GROUP, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for partial summary judgment (Dkt. No. 40). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons explained herein.

I. **BACKGROUND**

This case arises out of the purchase of the boat, the WESTERN CHALLENGER (the Vessel), by Plaintiff, and the associated advice, consulting, and other services provided by Defendants. (Dkt. No. 17.) The WESTERN CHALLENGER was originally built as a United States Navy minesweeper. (Dkt. No. 41-1 at 12.) At some point, it was sold into Canada and converted into a fish tendering vessel. (*Id.*) The parties are unaware when or where that conversion took place. (*Id.*)

Plaintiff purchased the WESTERN CHALLENGER in 2013 with plans to repair it,

redocument it in the United States, and use it as a fishing tender. (*Id.* at 12, 63.) Prior to purchasing the Vessel, Plaintiff consulted with Defendants, who assured Plaintiff that there would be "no problem" getting the boat documented with the United States Coast Guard (USCG) so that it could be used as a fishing tender. (Dkt. No. 45 at 2.) After purchase, Plaintiff brought the boat to Anacortes, Washington, and immediately began work on it. (Dkt. No. 41-1 at 23, 25.)

In anticipation of the Vessel being documented and ready to work, Plaintiff signed a tendering charter with Trident Seafoods in May 2013. (Dkt. No. 45 at 5.) The contract was for 60 days, beginning in July 2013. (*Id.*)

Around this time, Plaintiff also hired Defendants to admeasure the Vessel and provide a tonnage certificate to the USCG in order to obtain a coastwise endorsement. (Dkt. No. 41-1 at 25–37.) Defendants sent three tonnage certificates to the USCG. (Dkt. Nos. 45-5, 45-8, and 45-9.) The first certificate, dated June 10, 2013, stated a tonnage of 227 tons and included remarks indicating alterations to the hull and superstructure of the Vessel. (Dkt. No. 45-5.)

Plaintiff knew an admeasurement over 200 tons would make the Vessel ineligible for a coastwise endorsement and contacted Defendants. (Dkt. Nos. 45-6 and 45-7.) Defendants responded that they could revise the tonnage certificate, although Plaintiff did not want to do so if it meant falsifying information. (*Id.*) Defendants then issued another tonnage certificate, dated the same day as the first, listing the tonnage at 191 tons, and included no remarks. (Dkt. No. 45-8.) In August 2013, Defendants sent a third tonnage certificate—unbeknownst to Plaintiff—listing the Vessel's tonnage at 227 tons. (Dkt. No. 45-9.) The remarks stated that the certificate was reissued "to reflect modifications to the hull." (*Id.*) The USCG refused to grant Plaintiff a coastwise endorsement because it was over the 200-ton limit. (*Id.*) In 2014, Plaintiff obtained special legislation in Congress to enable it to receive a coastwise endorsement. (*Id.* at 3–4.)

However, Plaintiff could not begin using the Vessel because it also needed to obtain a fishery endorsement. Before one may operate a commercial fishing vessel in the United States, she must obtain a fishing endorsement from the National Vessel Documentation Center (NVDC),

a division of the USCG which has exclusive responsibility for issuing such endorsements. 46 U.S.C. § 12102; 46 C.F.R. § 67.21; Dkt. No. 42 at ¶ 10. A fishery endorsement may be issued for a vessel that is United States built and owned, and measuring five net tons or more. 46 C.F.R. §§ 67.5-67.9(a). However, "[a] vessel otherwise eligible for a fishery endorsement . . . permanently loses that eligibility if it undergoes rebuilding as defined in [46 C.F.R.] § 67.177 outside of the United States." 46 C.F.R. § 67.21(c). Under 46 C.F.R. 67.177, a "vessel is deemed rebuilt foreign when any considerable part of its hull or superstructure is built upon or substantially altered outside of the United States." In other words, if the WESTERN CHALLENGER was converted from a minesweeper to a fishing tender in Canada, it would be permanently ineligible for a fishing endorsement.

In October 2014, Plaintiff applied for a fishery endorsement with the NVDC. (Dkt. No. 42 at ¶ 10.) Four days later, the NVDC sent Plaintiff's documentation agent a letter asking for "evidence of all alterations made and city, state & country where the alterations were made." (Dkt. No. 41-1 at 52.) Plaintiff understood this as a request for information on when and where the boat was converted to a fish tender. (*Id.*) Because Plaintiff did not have that information, it did not send anything to the NVDC. (*Id.*)

One year later, in October 2015, the NVDC again requested this information. (*Id.*) In November 2015, Plaintiff responded that the Vessel had "not been converted nor [had] any structural changes as alleged in the NVDC letter dated [October 24, 2014]." (*Id.* at 57.)

The tonnage division (separate from the NVDC) contacted Plaintiff via letter in June 2016. In the letter, the tonnage division stated that "other alterations were made prior to [Plaintiff's] purchase, although we lack the necessary evidence to establish specifically when they were made." (*Id.* at 58.) The NVDC also wrote to Plaintiff's documentation agent in June 2016, and stated that "[b]ecause the NVDC has not received any evidence to establish when and where the alterations were performed [it is] unable to determine if the vessel qualifies as United States built and, thus, eligible for a fishery endorsement." (*Id.* at 60–62.) Plaintiff confirmed that

1 the USCG denied the fishery endorsement because it could not determine whether the conversion
2 to a fish tender constituted a foreign rebuild. (*Id.* at 60.)

Plaintiff initiated this lawsuit in June 2016, alleging a breach of contract claim and a tort claim for negligent misrepresentation. (Dkt. No. 17 at 4–6.) As part of the relief requested, Plaintiff asked for loss-of-use damages totaling over $500,000—for each claim—for the time the WESTERN CHALLENGER could have been operating as a fishing tender but for Defendants' conduct. (Dkt. No. 33 at 5, 6.) Defendants now move for partial summary judgment on those damages, arguing that the reason the WESTERN CHALLENGER did not receive a fishery endorsement had nothing to do with Defendants' conduct. (Dkt. No. 40 at 3.) Defendants also move for partial summary judgment because Plaintiff failed to mitigate its damages. (Dkt. No. 40 at 9–10.)

## II. DISCUSSION

### A. Standard of Review

The Court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court views the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Negligent Misrepresentation

To recover on a negligent misrepresentation claim, Plaintiff must prove that: (1) Defendants supplied Plaintiff with false information as to an existing fact; (2) Defendants knew or should have known that the information was supplied to guide Plaintiff in the transaction; (3) Defendants were negligent in obtaining or communicating the false information; (4) Plaintiff relied on the false information; (5) Plaintiff's reliance was reasonable; and (6) the false information proximately caused Plaintiff's damages. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007); *Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 623 (Wash. 2002). At this time, Defendants move for summary judgment only on the sixth element, proximate cause.

Proximate cause is "a cause in which direct sequence [unbroken by any new independent cause] produces the injury complained of and without which such injury would not have happened." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007). It is comprised of two elements: cause in fact and legal causation. *Dewar v. Smith*, 342 P.3d 328, 337 (Wash. Ct. App. 2015). "Cause in fact is the actual, 'but for,' cause of the injury. 'Legal causation' focuses on whether, as a matter of policy, the connection between the ultimate result and the tortfeasor's act is too remote or attenuated to impose liability." *Id.*

Defendants' argument is that the only reason Plaintiff suffered loss-of-use damages is because the NVDC refused to issue a fishery endorsement. (Dkt. No. 40 at 13.) However, in the context of negligent misrepresentation, this argument misses the mark. Viewing the evidence before the Court in the light most favorable to Plaintiff, a reasonable trier of fact could find that but for Defendants' assurances that there would be no issues documenting the WESTERN CHALLENGER, Plaintiff would not have purchased a boat it could not use. Plaintiff informed Defendants that it intended to use the Vessel as a fish tender. (Dkt. No. 45 at 2.) Plaintiff has

presented sufficient evidence for a jury to conclude that Defendants knew or should have known that it would be difficult, if not impossible, to document the Vessel in order to use it as a tender in United States waters. (Dkt. No. 45-1.) In other words, if the trier of fact finds that (1) Plaintiff adequately communicated its intent to use the Vessel as a fish tender, (2) Defendants knew or should have known Plaintiff would not be able to do so because of the foreign rebuild issue, yet still advised Plaintiff to purchase the vessel, then the trier of fact may also find Defendants' actions proximately caused loss-of-use damages. The amount of damages then becomes a question for the trier of fact. Accordingly, Defendants' motion for partial summary judgment as to loss-of-use damages for the negligent misrepresentation claim is DENIED.

### C. Breach of Contract

Plaintiff's breach of contract claim is a different matter. For a breach of contract claim, Plaintiff must show that the alleged breach proximately caused the loss-of-use damages. *NW Mfrs. v. Dep't of Labor*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.") (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (Wash. 1932)); *see also Exxon Co. v. Sofec*, 517 U.S. 830, 839–40 (1996) ("Although the principles of legal causation sometimes receive labels in contract analysis different from the 'proximate causation' label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well.").

Plaintiff contracted with Defendants to provide tonnage certificates for the WESTERN CHALLENGER. (Dkt. No. 33 at 2–3.) Defendants argue that even if they did breach the contract, they were not responsible for loss-of-use damages because the NVDC denied the fishery endorsement for reasons unrelated to the breach of contract. (Dkt. No. 40 at 13.) The Court agrees with Defendants.

As previously noted, two endorsements are required before a vessel may operate in the United States as a fish tender: a coastwise endorsement and a fishery endorsement. The breach of

contract claim and the tonnage certificates relate only to the coastwise endorsement. After obtaining special legislation in Congress for the coastwise endorsement, Plaintiff applied for the fishery endorsement and included information from the Canadian ship registry which showed no known alterations in Canada. (Dkt. No. 44 at 3–4.) Plaintiff argues that but for the red flag raised by Defendants' production of three contradictory tonnage certificates, the NVDC would have accepted the information from the Canadian ship registry and issued Plaintiff a fishery endorsement. (Dkt. No. 43 at 6–7.) However, the letter from the USCG acknowledged that alterations were made prior to Plaintiff's purchase of the Vessel. (Dkt. No. 41-1 at 58.) The USCG was therefore aware of the Vessels history irrespective of the tonnage certificates provided by Defendants. The Court will not assume that, had everything gone smoothly with the tonnage certificates, the NVDC would not have inquired into the Vessel's rebuild history. To do so, the Court would necessarily have to find that but for Defendant's breach of contract, the NVDC would have ignored its regulatory duty.

Plaintiff also argues that summary judgment is inappropriate because Defendants have not proven or provided any evidence that the Vessel is in fact a foreign rebuild. (Dkt. No. 43 at 12.) This is incorrect. Whether the Vessel was converted from a mine sweeper to a fish tender in Canada, the United States, or another country is currently disputed. However, what is not in dispute is the NVDC's reason for denying the fishery endorsement. Because it is undisputed that the NVDC denied Plaintiff's application for a fishery endorsement due to the foreign rebuild issue, any breach of contract on the part of Defendants did not proximately cause Plaintiff's loss-of-use damages. Accordingly, Defendant's motion for partial summary judgment as to the loss-of-use damages for the breach of contract claim is GRANTED.

**D.     Failure to Mitigate**

Finally, Defendants argue that because Plaintiff has failed to mitigate its loss-of-use damages, the Court should grant summary judgment for Defendants. (Dkt. No. 40 at 10.) Specifically, Defendants claim that (1) Plaintiff could have sold the Western Challenger for more

than the purchase price, (2) other fish tendering vessels were available for purchase, and (3) Plaintiff made no efforts to sell the Vessel and find a replacement. (*Id.* at 14.)

"The doctrine of mitigation of damages . . . prevents an injured party from recovering damages that the injured party could have avoided if it had taken reasonable efforts after the wrong was committed." *TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc.*, 142 P.3d 209, 212 (Wash. Ct. App. 2006) (citations omitted). Reasonableness is the touchstone for whether a Plaintiff properly mitigated her damages. *Hogland v. Klein*, 298 P.2d 1099, 1102 (Wash. 1956). "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." *Id.* (citation omitted).

Here, Defendants have presented evidence that Plaintiff could have sold the boat, purchased a new one, and began operating as a fish tender several years ago. (Dkt. No. 41-1.) Plaintiff, on the other hand, has presented evidence of obtaining special legislation for a coastwise endorsement, making modifications to the Vessel to comply with USCG regulations, and ongoing efforts to obtain a fishery endorsement from the USCG. (Dkt. No. 45 at 4, 8, and 9–10.) Given the evidence from both parties, it is for a jury to determine whether Plaintiff chose a reasonable course in mitigating its damages. Accordingly, Defendants' motion for partial summary judgment for failure to mitigate is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. No. 40) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to loss-of-use damages stemming from the breach of contract claim. It is DENIED as to loss-of-use damages stemming from the negligent misrepresentation claim and failure to mitigate.

//

//

//

//

1	DATED this 2nd day of August, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE