THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN CHALLENGER, LLC, <br><br> Plaintiff, <br> v. <br><br> DNV GL GROUP, *et al.*, <br><br> Defendants. | CASE NO. C16-0915-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 59). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS IN PART Defendants' motion and DENIES IN PART Defendants' motion for the reasons explained herein.

**I.  BACKGROUND**

This case arises from the purchase of the vessel, the WESTERN CHALLENGER (the "Vessel"), and the associated advice, consulting, and admeasurement services Don Seymour, the Moorsom Consulting Group, LLC and its owner Phil Essex, and Germanischer Lloyd (USA), Inc. ("GL") (collectively "Defendants") provided before and after the purchase. (Dkt. No. 33.) Owners Tony Moran and Jon Franklin formed the Western Challenger, LLC ("Plaintiff") to purchase the Vessel for $85,000 in 2013 with plans to it as a U.S. fishing tender. (Dkt. Nos. 59 at 4, 9; 69 at 3.) This would require both a U.S. fisheries endorsement and a coastwise

endorsement, which are issued by the National Vessel Documentation Center ("NVDC"), a division of the U.S. Coast Guard ("USCG"). (Dkt. Nos. 33 at 2, 59 at 4.)

To obtain a coastwise endorsement, absent legislative relief, a vessel may not exceed 200 tons, as measured using the International Tonnage Convention ("ITC"). 46 U.S.C. § 12132(a); *see* 46 C.F.R. § 69, Subpart B. A vessel's ITC can only change through expansion or removal of sections of the hull or superstructure. *See* 46 C.F.R. § 69.57; (Dkt. No. 60-3 at 6–8). In contrast, a vessel's Gross Register Tonnage ("regulatory tonnage") can change without exterior modification, through the addition or removal of deep framing or tonnage openings. *See* 46 C.F.R. § 69.103, 107; (Dkt. No. 60-3 at 6–8).[1] The measurement of a vessel, if not prepared by USCG, must be done by a member of the International Association of Classification Societies. 46 C.F.R. § 69.27.

Prior to purchasing the Vessel, Plaintiff's documentation consultant, Mr. Kim of Kim Marine Documentation, instructed Plaintiff to seek out advice regarding whether it could obtain the necessary coastwise endorsement for the Vessel. (Dkt. Nos. 59 at 4, 69 at 4). Moran and Franklin contacted Seymour, who they thought could "help the vessel comply with any and all tonnage requirements that applied to the situation." (Dkt. No. 69 at 4.) A series of conversations with Seymour followed, primarily involving Moran.[2] According to Plaintiff, Seymour "assured them that he would be able to get the vessel the necessary certificates to get redocumented." (*Id*.) Defendants disagree. They allege Seymour only indicated that he "could assist in getting the boat's *regulatory* tonnage (not ITC) under 200 gross tons." (Dkt No. 59 at 4.) Plaintiff purchased the Vessel shortly after Moran's and Franklin's preliminary discussions with Seymour. (*Id*.)

Plaintiff signed a tonnage consulting agreement with Seymour a few weeks after

---

[1] While irrelevant for purposes of obtaining a coastwise endorsement, regulatory tonnage is a consideration for other regulatory purposes, such as manning requirements. 46 C.F.R. § 15.805(a)

[2] Franklin indicates he was more of a "money partner," as he had a full time job outside of the venture. (Dkt. No. 60-6 at 10.)

purchase. (Dkt. Nos. 59 at 4–5, 69 at 4–5); (*see* Dkt. No. 60-8 at 2) (consultation agreement). Seymour recommended deep framing and tonnage openings be added to the Vessel to reduce its regulatory tonnage, which Plaintiff did, incurring approximately $50,000 in costs. (Dkt. Nos. 33 at 5; 59 at 4–5; 69 at 4–5.) Seymour also assisted Plaintiff in arranging for the preparation of a tonnage certificate by GL. (Dkt. Nos. 59 at 5, 69 at 5.) GL, in turn, engaged Moorsom to provide admeasurement services to support the certificate. (Dkt. No. 59 at 11.) Moorsom's owner Essex did the admeasurement work, with Seymour's assistance on the regulatory portion. (*Id*.); (*see* Dkt. No. 60-7 at 6.)

GL issued its first tonnage certificate for the Vessel in June 10, 2013, reflecting an ITC of 227 tons and regulatory tonnage of 196 tons. (Dkt. Nos. 59 at 11, 69 at 6.) Plaintiff knew that an ITC over 200 would pose a problem and spoke with Essex to understand why the ITC came in as high as it did, given Plaintiff's modifications to the Vessel. (*Id*.) Essex agreed to work with GL to issue an updated tonnage certificate reflecting reductions for areas Essex felt could be excluded while work on the Vessel was ongoing. (Dkt. Nos. 59 at 12, 69 at 6.) This "interim" tonnage certificate reflected an ITC of 191. (*Id*.) GL submitted the original and the "interim" certificates to USCG. (*Id*.) After the work on the Vessel was complete, GL issued a third and final tonnage certificate. (Dkt. Nos. 59 at 12, 69 at 7.) The certificate again reflected an ITC of 227 tons. (*Id*.)

Because the final ITC exceeded 200 tons, USCG did not grant Plaintiff a coastwise endorsement. (Dkt. Nos. 59 at 13, 69 at 2.) Plaintiff sought legislative relief in 2014, eventually receiving a coastwise endorsement in 2015. (Dkt. Nos. 59 at 5, 69 at 15 n. 46.)

To obtain a fisheries endorsement, the Vessel must have been built in the U.S. *See* 46 C.F.R. §§ 67.21(c), 67.177. While the Vessel was originally built in the U.S., as a Navy minesweeper, it was converted to a fish tender and reflagged in Canada. (Dkt. Nos. 59 at 4, 69 at 3.) It is unclear where and when the conversion took place. (*Id.*) If the conversion occurred in Canada, the Vessel would not qualify under USGS regulations for a fisheries endorsement. 46

C.F.R. §§ 67.21(c), 67.177.

Plaintiff applied for a fisheries endorsement in October 2014. (Dkt. No. 59 at 14.) NVDC sent Kim a letter asking for "evidence of all alterations made and city, state & country where the alterations were made." (*Id.*) Plaintiff did not respond. (*Id.*) NVDC again requested this information. (*Id.* at 15.) Kim prepared a response on Plaintiff's behalf indicating that the Vessel had "not been converted nor [had] any structural changes . . . ." (*Id.*) But this was not consistent with information on file with the USCG's tonnage division. (*Id.* at 16.) The tonnage division had information indicating that alterations had been made to the Vessel, but it lacked evidence to establish the extent, timing, and location. (*Id.*) As a result, NVDC issued another letter to Plaintiff, indicating that "[b]ecause the NVDC has not received any evidence to establish when and where the alterations [on file with the tonnage division] were performed [it is] unable to determine if the vessel qualifies as United States built and, thus, eligible for a fishery endorsement." (*Id.*) To date, NVDC has refused to issue a fishery endorsement for the Vessel and Plaintiff has been unable to utilize the Vessel for its intended purpose. (Dkt. Nos. 33 at 4–6, 59 at 16.)

Plaintiff brings suit against Defendants for negligent misrepresentation[3] and breach of contract. (Dkt. No. 33 at 4–6.) Plaintiff alleges Defendants are jointly liable because Seymour acted as Moorsom's and GL's agent throughout Plaintiff's dealings with Seymour, Moorsom, and GL. (*Id.* at 2, 5.) Plaintiff seeks recovery for loss-of-use damages, amounts it incurred to seek legislative relief for a coastwise endorsement, and the amounts it paid to unnecessarily

---

[3] Plaintiff's Second Amended Complaint contains no explicit cause of action for 'negligent misrepresentation.' (Dkt. No. 33 at 4.) Instead, Plaintiff labeled the first cause of action as simply "negligence." (*Id.*) In none of the parties' previous motions or briefings did Plaintiff describe the 'negligence' claim as something other than a claim for negligent misrepresentation. (*See* Dkt. Nos. 14, 18, 19, 40, 43, 49) (Defendants' Motion to Dismiss, Defendants' Motion for Partial Summary Judgment, and related responses and replies). Further, Plaintiff's Second Amended Complaint does not articulate sufficient facts to support a negligence claim. Therefore, the Court views Plaintiff's first cause of action as one solely asserting negligent misrepresentation.

reduce the Vessel's regulatory tonnage, based on Seymour's advice. (*Id*.) Defendants previously moved for partial summary judgment on Plaintiffs' loss-of-use claims, as limited solely to the issue of proximate cause. (Dkt. No. 40.) The Court granted the motion in part, holding that Plaintiff could bring a claim for loss-of-use damages based on a theory of negligent misrepresentation, but not on breach of contract. (Dkt. No. 52 at 6–7.) Defendants now move for summary judgment on all claims, asserting Plaintiff fails to bring sufficient evidence to survive summary judgment on any of its claims. (Dkt. No. 59 at 15–26.)

## II. DISCUSSION

### A. Standard of Review

The Court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court views the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. A "determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id*. at 255. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Agency Relationship Between Seymour, Moorsom, and GL

Plaintiff alleges that Seymour acted as Moorsom's and GL's agent throughout Plaintiff's

dealings with Seymour and, on this basis, all Defendants are liable for Plaintiff's damages. Federal maritime law "embraces the principles of the law of agency." *Stevens Tech. Services, Inc. v. S.S. Brooklyn*, 885 F.2d 584, 589 (9th Cir. 1989). Correspondingly, an actual agency requires, amongst other things, a manifestation by the principal that the agent will act on the principal's behalf. RESTATEMENT (THIRD) OF AGENCY § 1.01. An apparent agency requires actions by the principal that cause a third party to believe an agency relationship exists. RESTATEMENT (THIRD) OF AGENCY § 2.05. Finally, a principal can ratify the acts of another through the principal's subsequent actions. RESTATEMENT (THIRD) OF AGENCY § 4.01.

First, Plaintiff asserts that Seymour acted as Moorsom's and GL's actual agent because he was the primary point of contact in all of Plaintiff's dealings with Defendants. (*See generally* Dkt. No. 33 at 2–6.) This fact is just as likely to indicate an agency relationship between *Plaintiff and Seymour*, as between Seymour, Moorsom, and GL. Further, none of the agreements that Plaintiff directs the Court to in support of an actual agency relationship (*see* Dkt. Nos. 71-4, 71-10) include a manifestation that Seymour will be acting on Moorsom or GL's behalf. Plaintiff fails to bring sufficient evidence to survive summary judgment as to an actual agency relationship.

Second, Plaintiff claims that Seymour acted as Moorsom's and GL's apparent agent because of the "confusing relationship of classification societies [such as GL] and their contractors [such as Seymour]." (Dkt. No. 69 at 16–17.) Plaintiff references a current portion of Moorsom's website describing Seymour as a member of Moorsom's "team." (*Id*. at 4.) But this is insufficient to establish reliance by Plaintiff because (a) Plaintiff presents no evidence that it actually viewed the website prior to engaging Seymour and (b) contradictory deposition testimony from Moran that he had never heard of Moorsom before engaging Seymour. (Dkt. No. 60-2 at 20–21). Further, Moran concedes that he understood the tonnage consultation agreement with Seymour to be solely for Seymour's services—not Moorsom's, Essex's, or GL's. (*Id*. at 23–24.)

Third, Plaintiff suggests that by issuing an incorrect "interim" tonnage certificate, Moorsom and GL ratified Seymour's actions. (Dkt. No. 69 at 18.) The Court does not see how the issuance of an "interim" tonnage certificate reflecting reduced *ITC* tonnage represents an affirmance of Seymour's acts relating to *regulatory* tonnage, particularly in light of Moran's concession that Seymour only discussed regulatory tonnage with him. (*See* Dkt. No. 60-2 at 19.) Plaintiff fails to bring sufficient evidence to survive summary judgment as to ratification.

The Court GRANTS Defendants Moorsom, Essex, and GL summary judgment on Plaintiff's negligent misrepresentation and breach of contract claims as it relates to acts by Seymour. Similarly, the Court GRANTS Defendant Seymour summary judgment on claims as it relates to acts by Moorsom, Essex, and GL.

**C.     Negligent Misrepresentation**

To recover on a negligent misrepresentation claim, Plaintiff must prove by "clear, cogent, and convincing evidence" that: (1) Defendants supplied Plaintiff with false information as to an existing fact; (2) Defendants knew or should have known that the information was supplied to guide Plaintiff in the transaction; (3) Defendants were negligent in obtaining or communicating the false information; (4) Plaintiff relied on the false information; (5) Plaintiff's reliance was reasonable; and (6) the false information proximately caused Plaintiff's damages. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007). Defendants allege Plaintiff brings insufficient evidence to survive summary judgment on elements (1), (5) and (6). (*See* Dkt. No. 59 at 2.) According to Plaintiff, Seymour "provided false information to Plaintiff regarding, among other things, the necessity of altering the Vessel to comply with Coast Guard requirements," and after purchasing the Vessel, Moorsom and GL "provided false information regarding the condition of the Vessel to the U.S. Coast Guard," i.e., the "interim" tonnage certificate. (Dkt. No. 33 at 4.)

         1.     <u>Pre and Post-Purchase Tonnage Consulting</u>

Moran and Franklin allege they made Seymour aware of their intended purpose for the Vessel and Seymour assured them if they purchased the Vessel, Seymour could get them the

tonnage certificate they needed. (Dkt. No. 69 at 9–12.) According to Franklin, Seymour said "[d]on't worry about it. I'm the expert. That's my job." (Dkt. No. 74-1 at 104.) According to Moran, Seymour said "This is my area of expertise. This is what I do. I can get the [tonnage] certificate for you. Don't worry about it . . . He said that he could get, he could get it under 200 gross tons without a problem." (Dkt. No. 74-1 at 6.) This information has proven to be false.[4] But for such false information to be actionable, Plaintiff must reasonably rely on it and it must be the the proximate cause of Plaintiff's damages.

It is undisputed that Kim advised Moran that the relevant measurement for purposes of a coastwise endorsement is ITC and that this number could not easily be changed. (*See* Dkt Nos. 60-1 at 9, 60-2 at 17.) It is also undisputed that Kim's associate sent Moran an e-mail before the purchase with the following advice: "the vessel must be formally measured to be under 200 gross **ITC**. **It must be ITC**." (Dkt. No. 60-5 at 2) (emphasis in original). Kim was skeptical its ITC could be under 200 tons, given the Vessel's length—approximately 134 feet. (Dkt. No. 60-1 at 16.) Kim communicated this concern to Plaintiff. (*Id*. at 7, 16) But Plaintiff "took Don Seymour and Phil Essex's advice other than mine." (Dkt. No. 60-1 at 7.) Moran disregarded Kim's advice because he felt Seymour "was the smartest person that I had conferred with about tonnage, any tonnage, regulatory or ITC." (Dkt. No. 60-2 at 17); (*see also* Dkt. No. 71-12 at 2) (according to Kim, "when somebody relies on expert like Don Seymour . . . [w]hat I think doesn't really matter.") This evidence, when viewed in a light most favorable to Plaintiff, is sufficient to establish reasonable reliance as an issue for trial.

Proximate cause is "a cause which in direct sequence [unbroken by any new independent cause] produces the injury complained of and without which such injury would not have happened." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007). It is comprised of two elements: cause in fact and legal causation. *Dewar v. Smith*,

---

[4] Moran also testified "[Seymour] told me I didn't need ITC and that I only needed regulatory" for a tonnage certificate. (Dkt. No. 60-2 at 17). This was also false.

342 P.3d 328, 337 (Wash. Ct. App. 2015). "Cause in fact is the actual, 'but for,' cause of the injury. 'Legal causation' focuses on whether, as a matter of policy, the connection between the ultimate result and the tortfeasor's act is too remote or attenuated to impose liability." *Id.*

Regardless of how and when Plaintiff obtained a coastwise endorsement, it cannot operate the vessel as a U.S. fishing tender until it acquires a fisheries endorsement. To date, Plaintiff has been unable to do so, due to its inability to demonstrate to USCG that the vessel was converted to a fishing tender in the U.S. (Dkt. No. 60-2 at 43.) Whether Plaintiff will ever receive legislative relief is uncertain. And Plaintiff presents insufficient evidence that Seymour assured them he could assist in obtaining a fisheries endorsement. In fact, Moran and Franklin's testimony indicates the opposite—that the only advice Seymour provided was tonnage consulting. (*See* Dkt. No. 60-2 at 19) (Moran had no discussions with Seymour regarding the foreign rebuild requirement); (Dkt. No. 60-6 at 5) (Franklin only looked to Seymour for tonnage advice and Kim Marine to assist with the documentation).

As to Seymour's post-purchase advice, Plaintiff asserts that it would not have incurred $50,000 in regulatory tonnage modifications had Seymour advised it that those modifications would be insufficient to obtain a coastwise endorsement. (Dkt. No. 33 at 5.) According to Plaintiff, keeping regulatory tonnage under 200 tons was of no value. Moran holds a license allowing him to captain a vessel in excess of 200 regulatory tons, and had intended to do so once they acquired the requisite endorsements. (Dkt. No. 70 at 2.) Therefore, Plaintiff presents sufficient evidence to create an issue for trial as to injuries from Seymour's pre and post-purchase advice, but only as it relates to the $50,000 Plaintiff spent in regulatory modifications to the Vessel.

The Court GRANTS Defendant Seymour summary judgment on Plaintiff's negligent misrepresentation claim as it relates to loss-of-use damages. The Court DENIES Defendant Seymour summary judgment on Plaintiff's damages for regulatory modifications.

//

### 2. Tonnage Certificates

Plaintiff alleges that the "interim" tonnage certificate GL issued, with Essex and Moorsom's assistance, was inaccurate and invalid. (Dkt. No. 69 at 19–20.) It was inaccurate in that it did not reflect actual modifications to the vessel and it was invalid in that USCG regulations do not allow for interim certificates. (*Id.*) But even if these allegations are true, Plaintiff must allege *how* GL's issuance of this improper certificate proximately caused Plaintiff's injuries. Again, Plaintiff alleges that it has suffered loss-of-use damages from a delayed coastwise endorsement and the inability to obtain a fisheries endorsement. But Plaintiff fails to plausibly assert why an inaccurate tonnage certificate proximately caused these injuries or provide sufficient evidence to support such an assertion. (*See generally* Dkt. Nos. 33 at 2–5, 69 at 19–20.)[5] The Court GRANTS Defendants summary judgment on this issue.

### D. **Breach of Contract**

The Court previously granted Defendants partial summary judgment on Plaintiff's breach of contract claim as it relates to loss-of-use damages. (Dkt. No. 52 at 6–7.) Defendants now move for summary judgment on Plaintiff's remaining damages: the cost of obtaining a coastwise endorsement through legislative efforts and the cost of unnecessary regulatory tonnage modifications (*See* Dkt. Nos. 33 at 5–6, 59 at 24.)

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *NW Mfrs. v. Dep't of Labor*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (Wash. 1932); *see also Exxon Co. v. Sofec*, 517 U.S. 830, 839–40 (1996). Plaintiff entered into an agreement with Seymour to provide tonnage consulting services and later entered into an

---

[5] Defendants previously alleged that the Coast Guard refused to issue a coastwise endorsement because of inconsistent ITC measurements, and this assertion was supported by an affidavit from Kim. (Dkt. No. 44 ¶ 11.) Kim has since conceded that Plaintiff, in fact, never applied for the endorsement, since ITC exceeded 200 tons. (*See* Dkt. No. 60-1 at 29–32.) Therefore, Plaintiff presents no evidence that inconsistent ITC measurements played any role in its inability to initially secure a coastwise endorsement.

agreement with GL to provide a tonnage certificate. (*See* Dkt. Nos. 60-8 at 2, 60-11 at 2) (written agreements). An implied duty of good faith and fair dealing applies to each. *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991). Plaintiff alleges Seymour breached this duty when he rendered erroneous advice regarding what assistance he could provide in reflagging the vessel, and GL and Moorsom breached the duty when GL issued an invalid tonnage certificate.

### 1. May 2013 Tonnage Consulting Agreement

Plaintiff brings sufficient evidence to demonstrate that whether Seymour rendered erroneous advice is a genuine issue for trial. *See supra* Part II.C.1. Plaintiff also brings sufficient evidence to create an issue for trial as to whether Plaintiff would have incurred the expenses associated with obtaining a coastwise endorsement through legislative efforts and/or the expenses associated with the regulatory modifications it made to the Vessel absent Seymour's consulting advice. (*See* Dkt. Nos. 60-2 at 17, 70, 71-3, 71-7 at 1–3, 71-9 at 2–5.) Therefore, the Court DENIES Seymour summary judgment on Plaintiff's claim that Seymour breached their tonnage consulting agreement, but only as it relates to damages *other* than loss-of-use.

### 2. June 2013 Tonnage Certificate Agreement

It is undisputed that the Vessel cannot qualify for a coastwise endorsement absent legislative relief because its ITC tonnage exceeds 200, and this number cannot change absent major modifications to the Vessel. (Dkt. No. 60-1 at 7.) GL's issuance of an "interim" tonnage certificate, even if "invalid, would not change this result. (*See* Dkt. No. 60-1 at 29–32) (Kim admits that USCG denied the fisheries endorsement based on inadequate documentation of the rebuild rather than due to the "interim" tonnage certificate issued by GL). Further, Plaintiff presents insufficient evidence to create an issue at trial regarding whether GL or Moorsom assured Plaintiff that the tonnage certificate would come in below 200 ITC or assured Plaintiff that GL or Moorsom would otherwise assist Plaintiff in acquiring a coastwise endorsement. (*See* Dkt. No. 60-2 at 28, 33) (Moran indicates that no one at Moorsom or GL ever guaranteed that the USCG would document the Vessel, or that it would come in under 200 ITC). Therefore, the

Court GRANTS Defendants summary judgment on Plaintiff's claim that GL breached the June 2013 tonnage certificate agreement.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 59) is GRANTED IN PART and DENIED IN PART. It is GRANTED for all claims against GL, Essex and Moorsom, as well as the claims against Seymour relating to GL's issuance of the "interim" tonnage certificate. Summary judgment on claims against Seymour, as they relate to Seymour's pre and post-purchase tonnage consulting, is DENIED, but only as to damages *other* than loss-of-use.

DATED this 27th day of December, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE